FILED
September 16, 2026
Jeanne A. Naughton, CLERK
United States Bankruptcy Court
Newark, NJ
By: Juan Filgueiras, Courtroom Deputy

| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
|---|---|
| In Re:<br><br>S B BUILDING ASSOCIATES LIMITED PARTNERSHIP, SUCCESSOR BY MERGER TO SB MILLTOWN INDUSTRIAL REALTY HOLDINGS, LLC, and<br>ALSOL CORPORATION,<br><br>Debtor. | Case No.: 22-14231 (VFP)<br><br>Chapter: 11<br><br>Hearing Date: July 29, 2026<br><br>Judge: Vincent F. Papalia |

**OPINION GRANTING: (I) DEBTOR'S MOTION FOR ENTRY OF AN ORDER AWARDING INTERIM EXPENSES; AND (II) SASS CREDITORS' MOTION FOR ENTRY OF AN ORDER AWARDING EXPENSES, SUBJECT TO FURTHER PROCEEDINGS AS TO SCOPE AND REASONABLENESS OF ANY AWARD**

<u>APPEARANCES</u>:

**MORRIS S. BAUER, ESQ.**
**DUANE MORRIS LLP**
200 Campus Drive, Suite 300
Florham Park, New Jersey 07932
*Counsel to Debtor/Debtor-in-Possession*

**LAWRENCE S. BERGER, ESQ.**
**BERGER & BORNSTEIN, LLC**
237 South Street
Morristown, New Jersey 08962
*Special Counsel to Debtor/Debtor-in-Possession*

**STUART J. GLICK, ESQ.**
**BRACEWELL LLP**
31 W. 52nd Street
Suite 1900
New York, New York 10019
*Counsel to Sass Creditors*

**DENNIS J. DRASCO, ESQ.**
**ROBERT S. LIPSCHITZ, ESQ.**
**JAVERBAUM WURGRAFT HICKS KAHN**
103 Eisenhower Parkway
Roseland, New Jersey 07068
*Counsel to The Milltown-Ford Avenue Redevelopment Agency*

**THOMAS R. VALEN, ESQ.**
**JOHN S. MAIRO, ESQ.**
**FBT GIBBONS LLP**
One Gateway Center
Newark, New Jersey 07102
*Counsel to Milltown Ford Avenue Redevelopers LLC*

**HONORABLE VINCENT F. PAPALIA**
**United States Bankruptcy Judge**

## I. INTRODUCTION

This matter is before the Court on the Motions of: (i) S B Building Associates Limited Partnership, successor by merger to SB Milltown Industrial Realty Holdings, LLC, and Alsol Corporation (collectively, the "Debtor") for Entry of an Order Awarding Interim Expenses; and (ii) Cherry Tree Property, LLC, Sass Muni IV, LLC, Sass Muni V, LLC, and Sass Muni VI, LLC (collectively, the "Sass Creditors") for Entry of an Order Awarding Expenses (collectively, the "Expense Motions").

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b), as will be explained in further detail below, and the Standing Orders of Reference entered by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012 (Standing Order 12-1), and further amended on June 6, 2025 (Standing Order 2025-2). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409. This Court issues the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this contested matter under Fed. R. Bankr. P. 9014(c). To the extent any finding constitutes a conclusion of law, or any conclusion constitutes a finding of fact, it is adopted as such.

## II. FACTS AND PROCEDURAL HISTORY

The Expense Motions arise out of a decades-long dispute involving a 22-acre parcel owned by the Debtor in Milltown, New Jersey (the "Property"). Dkt. No. 230-2 at 4; Dkt. No. 241-1 at 3. In 2001, the Borough of Milltown (the "Borough" or "Milltown") commenced proceedings to designate the Property as blighted. Dkt. No. 230-2 at 4; Dkt. No. 241-1 at 3. On September 13, 2001, the Borough created the Milltown-Ford Avenue Redevelopment Agency (the "Agency") to acquire the Property, by contract or condemnation, and designated Boraie Development LLC

("Boraie") as the redeveloper. Dkt. No. 230-2 at 4-5; Dkt. No. 241-1 at 3. Boraie later assigned its redevelopment rights to its affiliate, Milltown Ford Avenue Redevelopers LLC (the "Redeveloper"). Dkt. No. 230-2 at 5; Dkt. No. 241-1 at 3.

A. The Condemnation Action is Commenced in 2019

On November 22, 2019, nearly twenty years after the original blight designation, the Agency filed a condemnation complaint in the Superior Court of New Jersey (the "Condemnation Action") against the Debtor and other defendants who had or may have had an interest in the Property, including the Sass Creditors[1] and the United States of America on behalf of the United States Environmental Protection Agency (the "EPA"). Dkt. No. 230-2 at 9; Dkt. No. 241-1 at 5; Dkt No. 236-1 at 16. On December 18, 2019, the EPA removed the action to District Court pursuant to 28 U.S.C. § 1444. Case No. 3:19-cv-21494, Dkt. No. 1; Dkt. No. 230-2 at 9; Dkt. No. 241-1 at 5. On November 17, 2020, a Consent Order was entered in the Condemnation Action stating that the matter would proceed "in accordance with the provisions of Fed. R. Civ. P. 71.1(k) and under New Jersey state substantive law as set forth in the New Jersey Eminent Domain Act, N.J.S.A. 20:3-1, *et seq.*" (the "November 2020 Consent Order"). Case No. 3:19-cv-12492 Dkt. No. 39, ¶ 2.

On May 10, 2022, the District Court granted a request made by the Agency to "quick take"[2] the Property upon deposit of $1,750,000 with the District Court Clerk. Dkt. No. 230-2 at

[1] The Sass Creditors are secured creditors of the Debtor by virtue of tax sale certificates they hold against the Property, which formed the basis for foreclosure actions they filed against the Debtor in 2011 and 2012. Dkt. No. 241-1 at 4.

[2] Quick take statutes allow states, cities, highway departments, and other condemning authorities to obtain possession of the property to be condemned on an expedited basis without having to wait for a final determination of just compensation (which may take many months or years). Quick take statutes usually require payment by the condemnor of the estimated value of the property as a condition of a quick taking. *See* 83 A.L.R.7th Art. 5 § 2 (2023).

9; Dkt. No. 241-1 at 6. On May 25, 2022, to prevent the Agency's quick take of the Property, the Debtor filed a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code. Dkt. No. 1; Dkt. No. 230-2 at 9; Dkt. No. 241-1 at 6-7. On September 15, 2022, this Court granted partial relief from the automatic stay, permitting the Condemnation Action to proceed, but preventing the Agency from taking title (through the quick take procedure or otherwise) absent further relief from stay. Dkt. No. 84.

The Condemnation Action was subsequently tried before a jury in the District Court from September 4-11, 2024. Dkt. No. 230-2 at 9; Dkt. No. 241-1 at 17. The jury ultimately returned a $25,650,000 just compensation verdict, and the District Court entered final judgment in that amount on September 27, 2024 (the "Final Judgment"). Dkt. No. 230-2 at 9-10; Dkt. No. 241-1 at 8. Post-judgment interest has been accruing at the federal rate since that date.

B. The Debtor's Motion in Aid of Litigant's Rights

On April 1, 2025, the Debtor filed a Motion with this Court for Entry of an Order in Aid of Litigant's Rights Enforcing the District Court Order for Final Judgment and Fixing Just Compensation by Compelling Payment Thereof by the Agency by a Date Certain, (the "Enforcement Motion"). Dkt. No. 180. The Enforcement Motion was vigorously contested and adjourned several times by consent of the parties.

On August 13, 2025, this Court granted the Enforcement Motion and entered an Order in Aid of Litigant's Rights Enforcing the District Court's Final Judgment Fixing Just Compensation in the Condemnation Action (the "August 13th Order"). Dkt. No. 205. The August 13th Order required the Agency to pay $25,650,000, plus post-judgment interest from September 27, 2024,

into the Bankruptcy Court's Registry on or before October 6, 2025.[3] *Id.* at 2. The August 13th Order further provided that if the Agency failed to pay by that date, the Agency would be deemed to have abandoned the Condemnation Action effective October 7, 2025. *Id.* at 3.

On October 3, 2025, the Agency and the Redeveloper filed a letter requesting an extension of the deposit deadline, indicating to the Court that they had only recently learned—in late September 2025—that the Property was subject to direct oversight by the New Jersey Department of Environmental Protection (the "NJDEP") arising from a 2016 transformer oil spill. Dkt. No. 219; Dkt. No. 241-1 at 10-12. This Court denied the request for an extension. Dkt. No. 226 at 22:25–23:1. The Agency did not make the deposit by the October 6, 2025 deadline and thus was deemed to have abandoned the condemnation. Dkt. No. 230-2 at 10-11; Dkt. No. 241-1 at 11. Subsequently, on October 14, 2025, the Agency filed with the District Court a Notice of Abandonment and a Motion to Dismiss the Condemnation Action (the "Dismissal Motion"). Dkt. No. 241-1 at 11.

The parties dispute the reason for the Agency's abandonment. The Agency represents that the discovery of NJDEP direct oversight drove its decision to abandon. Dkt. No. 241-1 at 10-12. The Debtor suggests that the Agency knew of the 2016 incident by 2019 (at the latest) because, among other reasons, the Agency's condemnation complaint named the State of New Jersey as a lienholder based on a Spill Act judgment tied to the same 2016 incident, with a copy of that judgment or lien attached to the complaint. No. 301-1 at 16–17. The Debtor also suggests that the Agency's knowledge of the direct oversight pre-September 2025 is further evidenced by

[3] The October 6, 2025 deadline was approximately two years after the Final Judgment was entered, six years after the Condemnation Action was commenced, and provided the Agency with substantially more time to decide how to proceed than was originally requested by the Debtor.

discussions of the related NJDEP lawsuit that took place in open court during the 2024 Daubert hearings. *Id*.

C. <u>The Pending Expense Motions</u>

The Agency's abandonment gave rise to the motions presently before the Court. On October 30, 2025, the Debtor filed a Motion for Entry of an Order Awarding Interim Expenses it incurred in connection with the designation of the Property for redevelopment through and including the Condemnation Action (the "Debtor's Motion"). Dkt. No. 230. The Debtor's Motion seeks expenses currently totaling $4,050,690.20 and reserves its rights to seek additional expenses and damages. Dkt. No. 230-3 at 2-3. On January 20, 2026, the Agency and Redeveloper filed a joint objection to the Debtor's Motion. Dkt. No. 241-1. The Sass Creditors filed a motion, very similar to the Debtor's Motion, several weeks later on February 10, 2026 (the "Sass Motion"). Dkt. No. 246. The Sass Creditors seek $474,746.23 and similarly reserve their rights to seek additional expenses and damages. Dkt. No. 246-2 at 2.

On May 26, 2026, a Consent Order was entered in the Condemnation Action withdrawing the Dismissal Motion without prejudice. Case No. 3:19-cv-21494, Dkt. No. 322. That Order specifically provided that "[t]he parties reserve all rights to reinstate the aforesaid Motion to Dismiss and opposition thereto following the disposition of the pending motion filed by Defendants for fees and expenses in the United States Bankruptcy Court…" *Id*.

On June 23, 2026, the Agency and Redeveloper filed a joint objection to the Sass Creditors Motion. Dkt. No. 300. Although the Debtor and the Sass Creditors raise slightly different arguments in support of the Expense Motions, and the Agency and Redeveloper raise slightly different arguments in response, the substantive arguments are similar or identical in most respects and will be dealt with together. To the extent there are substantive differences, they

will be addressed separately in this Opinion. After several adjournments consented to by the parties, the Debtor filed its response to the Agency and Redeveloper's objection on June 30, 2026. Dkt. No. 301. The Sass Creditors filed their response to the Agency and Redeveloper's objection on July 7, 2026. Dkt. No. 303. The resolution of the Expense Motions is the subject of this Opinion.

## III. DISCUSSION

### A. Jurisdiction

At the outset, this Court notes the unusual jurisdictional and procedural posture of the Expense Motions. This Court is deciding these Motions based on its jurisdiction over the Debtor's current chapter 11 case (and the Debtor's prior case that was confirmed in 2020, over Boraie's objections). *See* Dkt. No. 230-2 at 7; *see also* Case No. 13-12682. However, the fees, costs, and expenses sought to be recovered by the Debtor and the Sass Creditors were incurred (at least in significant part) in connection with the Condemnation Action, as well as the Debtor's bankruptcy cases and other potentially related state court litigation. Accordingly, the jurisdiction of both this Court and the District Court is relevant to the disposition of the Expense Motions, and each will be discussed below.

#### i. Bankruptcy Court Jurisdiction

Bankruptcy Court jurisdiction extends, generally, to four types of matters: (1) cases under title 11; (2) proceedings "arising under" title 11; (3) proceedings "arising in" title 11; and (4) proceedings "related to" a case under title 11. *See In re Blockfi, Inc.*, 2023 WL 6618809 at *2 (Bankr. D.N.J. Oct. 10, 2023). Jurisdiction over bankruptcy cases (such as this one) and "arising under" jurisdiction is "analogous to general federal question jurisdiction" and "empowers the bankruptcy courts to hear matters that turn upon a substantive bankruptcy right or invoke a cause

of action provided by the Bankruptcy Code." *In re Am. Home Mortg. Holding*, 477 B.R. 517, 526 (Bankr. D. Del. 2012). "Arising in" jurisdiction, on the other hand, extends to a claim that "could only arise in the context of a bankruptcy case by its very nature, not its particular factual circumstance. The proceeding must owe its existence to the filing of the bankruptcy petition." *Id.* at 527. "Related to" jurisdiction is much broader. "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*." *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original). If the outcome of the civil proceeding could conceivably "alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)" it is sufficiently "related to" bankruptcy such that the bankruptcy court may exercise its jurisdiction. *Id.*

Cases under title 11, proceedings "arising under" title 11 and proceedings "arising in" title 11 are considered "core" bankruptcy matters. *See In re Touch Am. Holdings, Inc.*, 401 B.R. 107, 117 (Bankr. D. Del. 2009). Jurisdiction over proceedings "related to" a case under title 11 is considered "non-core." *Id*. The distinction between "core" and "non-core" jurisdiction is significant because bankruptcy courts may only render final judgments, subject to appellate review, in "core" matters. *Id*. at n.18. For "non-core" matters, the bankruptcy court may only render proposed findings of fact and conclusions of law, subject to *de novo* review by the District Court, unless the parties consent to entry of final judgment by the bankruptcy court. *Id.*; 28 U.S.C. § 1334; 28 U.S.C. § 157(c); Fed. R. Bankr. P. 9033.

The Debtor and the Sass Creditors both argue that this Court has "core" jurisdiction to decide the Expense Motions under 28 U.S.C. § 1334 generally[4] and, more specifically, 28 U.S.C. § 157(b)(2)(A) and 11 U.S.C. § 542. Dkt. No. 230-2 at 4; Dkt. No. 246-1 at 6. The Sass Creditors additionally assert that this Court has "core" jurisdiction to interpret and enforce its own orders, and that "core" jurisdiction over the Expense Motions derives from its interpretation and enforcement of the August 13th Order. Dkt. No. 246-1 at 6.

Although the Agency and the Redeveloper acknowledge that this Court has "non-core" and "related to" jurisdiction here, they do not agree that the Court has "core" jurisdiction and do not consent to entry of final judgment in this Court. Dkt. No. 241-1 at 3. To the extent this Court's jurisdiction may ultimately be deemed to be "non-core" and "related to," this Opinion shall therefore constitute the proposed findings of fact and conclusions of law issued to the District Court pursuant to Fed. R. Bankr. P. 9033. The Court will address the parties' jurisdictional arguments in turn.

1. <u>11 U.S.C. § 542</u>

In their respective Motions, the Debtor and the Sass Creditors both state (among other things) that "[t]he statutory predicate for the relief sought [] is 11 U.S.C. § 542." Dkt. No. 230-2 at 4; Dkt. No. 246-1 at 6. Section 542 generally concerns turnover of property. *See generally* 11 U.S.C. § 542. Section 542(a) provides that any entity in possession, custody, or control of property that the trustee (or debtor-in-possession) may use, sell, or lease "shall deliver to the trustee [or debtor-in-possession], and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).

[4] Under 28 U.S.C. § 1334, this Court's jurisdiction over bankruptcy matters is derived from the District Court's original jurisdiction and the District Court's Standing Orders of Reference referred to above.

Section 542(b) requires payment of a debt that is property of the estate and is "matured, payable on demand, or payable on order." 11 U.S.C. § 542(b). Taken together, these provisions establish that a claim for turnover must be predicated on the return of a claimed amount or property that is liquidated and undisputed; otherwise, turnover is not appropriate (or applicable). *See, e.g., In re Abeinsa Holding Inc.*, 653 B.R. 713, 720 (D. Del. 2023) ("Turnover is not appropriate where there is a legitimate dispute over ownership of the property.") (internal citation omitted); *see also In re Oakwood Homes Corp.*, 342 B.R. 59, 67-68 (Bankr. D. Del. 2006) (turnover is "not a remedy available to recover claimed debts which remain unliquidated and/or in dispute").

The fees and expenses sought by the Debtor and the Sass Creditors plainly fail to satisfy the requirements of § 542. In fact, in its reply to the Agency and Redeveloper's opposition, the Debtor retreated from its position as to § 542 and acknowledged that "[t]he relief being sought has nothing to do with the turning over of a liquidated fund and, therefore, does not invoke Section 542."[5] Dkt. No. 301-1 at 11. The Sass Creditors do not concede the inapplicability of § 542 and instead argue that turnover is appropriate because their entitlement to the fees is "not genuinely disputed." Dkt. No. 303 at 21. This Court disagrees. The Sass Creditors' (and the Debtor's) entitlement to the payment of their fees and expenses is nothing less than vigorously disputed by the Agency and the Redeveloper. That very dispute was the subject of extensive briefing on these Motions and was a main focus of oral argument at the July 29th hearing. Accordingly, § 542 is inapplicable to the instant facts, and cannot serve as the statutory predicate for this Court's "core" jurisdiction.[6]

---

[5] Additionally, Special Counsel for the Debtor affirmed at the hearing that the Debtor was not proceeding with its § 542 argument, notwithstanding the Debtor's prior reliance on that section.

[6] In any event, Federal Rule of Bankruptcy Procedure 7001(a) provides that "a proceeding to recover money or property" constitutes an adversary proceeding and the Third Circuit has held that "turnover is mandatory only in the context of an adversary proceeding presided over by the

2. Inherent Authority

The Sass Creditors additionally argue that because bankruptcy courts have inherent authority to interpret and enforce their own orders, this Court has "core" jurisdiction to decide the Expense Motions in connection with the interpretation and enforcement of its August 13, 2025 Order in Aid of Litigant's Rights. Dkt. No. 246-1 at 6. As detailed above, the August 13th Order specifically provided that on or before October 6, 2025, the Agency was required to pay into the Bankruptcy Court's Registry the full amount of the Final Judgment in the Condemnation Action, in the amount of $25,650,000 together with post-judgment interest from the date of entry of the Final Judgment. Dkt. No. 205 at 2. That Order further provided that if payment was not made by October 6, 2025, the Agency would be deemed to have abandoned the Condemnation Action effective immediately on October 7, 2025. *Id*. at 3. The Agency failed to make the required payment by the October 6, 2025 deadline and thereby was deemed to have abandoned the Condemnation Action. *Id*.; Dkt. No. 230-2 at 10.

In the Sass Creditors' view, as joined in by the Debtor at oral argument, this Court's decision on the Expense Motions is directly tied to its enforcement of the August 13th Order, which triggered the abandonment, because the abandonment serves as the basis for the fee-shifting. Dkt. No. 246-1 at 6. The Debtor also noted that "*[b]y the terms of the August 13, 2025 Order*, the Agency has abandoned the Condemnation Action." Dkt. No. 230-2 at 11 (emphasis added). In this regard, it is well-settled that a bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934)); *see also In re Allegheny*

Bankruptcy Court." Fed. Bankr. P. 7001(a); *In re Denby-Peterson*, 941 F.3d 115, 128-31 (3d Cir. 2019). No adversary proceeding was filed here.

*Health Educ. and Research Foundation*, 383 F.3d 169, 176 (3d Cir. 2004) (holding "that the bankruptcy court correctly determined that the suit was a core proceeding because it required the court to interpret and give effect to its previous sale orders.").

In their opposition to both the Debtor's and the Sass Creditors' Motions, the Agency and Redeveloper did not directly address this Court's authority to interpret and enforce the August 13th Order as giving rise to "core" jurisdiction. However, the Agency and Redeveloper did generally argue that this Court is not the proper Court to decide the parties' requests for fees and expenses. Dkt. No. 241-1 at 40. Specifically, the Agency and Redeveloper argue that the Debtor and the Sass Creditors are engaging in forum shopping by filing the Expense Motions in this Court after the Agency already raised the issue of fee-shifting in its Motion to Dismiss the Condemnation Action (filed earlier in the District Court). *Id.*; Dkt. No. 300 at 26. Further, the Agency and Redeveloper argue that this Court should not conduct the required reasonableness analysis because "[t]he court … in the best position to assess the reasonableness of conduct and fees incurred in the Condemnation Action is … the court in which the matter was heard." Dkt. No. 241-1 at 40.

This Court finds the arguments advanced by the Sass Creditors persuasive. First, this Court agrees that it has "core" jurisdiction by virtue of the August 13th Order and its inherent authority to interpret and enforce its own orders. The Redeveloper argued at the hearing that cases holding that bankruptcy courts have "core" jurisdiction to enforce their own orders generally arise in the sale context. While this Court agrees that this basis for "core" jurisdiction is often asserted in connection with the enforcement of sale orders, the Court's inherent authority is by no means limited to those circumstances. *See, e.g., Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (settlement agreement and plan confirmation order); *In re Essar Steel Minn.*,

*LLC*, 47 F.4th 193, 199 (3d Cir. 2022) (discharge injunction order); *In re East Orange Gen. Hosp., Inc.*, 587 B.R. 53, 73 (D.N.J. 2018) (sale order). Here, the August 13th Order triggered and directly precipitated the abandonment. The abandonment gave rise to the Debtor and the Sass Creditor's claims for reimbursement of their respective fees and expenses, which claims are the subject of these Expense Motions. Further, the Agency and Redeveloper did not appeal the August 13th Order. That Order, therefore, is final and subject to interpretation and enforcement by this Court as a "core" proceeding.

3. 28 U.S.C. § 157(b)(2)(A)

The Sass Creditors additionally argue that this Court has "core" jurisdiction as it concerns administration of the estate under 11 U.S.C. § 157(b)(2)(A). Dkt. No. 303 at 19. The Debtor similarly joined in this argument at the hearing on the Expense Motions. This Court agrees that under 28 U.S.C. § 157(b)(2)(A), the decision on the Expense Motions constitutes a "core" proceeding as it concerns the administration of the estate in various ways, including the substantial impact of the Condemnation Action (and its abandonment) on property of the Debtor's estate, the Debtor's (and the Sass Creditors') claims for reimbursement of fees and expenses accrued post-petition, and the competing reorganization plans recently filed in this case.[7] *See, e.g., In re West Elect., Inc.*, 128 B.R. 900, 904 (Bankr. D.N.J. 1991) (finding "core" jurisdiction over an adversary proceeding under § 157(b)(2)(A) as a matter concerning estate administration where the action arose post-petition, the action belonged to the debtor-in-possession, the action involved property owned by the debtor-in-possession and the property was already property of the estate at the time the cause of action accrued).

[7] The Debtor, on the one hand, and Boraie and Redeveloper, on the other, filed competing plans on August 14, 2026. Dkt. Nos. 310 and 311.

With respect to the forum shopping argument made by the Agency and Redeveloper, the Court notes that the Consent Order entered in the Condemnation Action specifically provided for the Agency's withdrawal of its Motion to Dismiss pending the outcome of the Expense Motions which were expressly left to be decided by the Bankruptcy Court. Case No. 3:19-cv-12492 Dkt. No. 322. To then argue that this Court does not have jurisdiction to decide these Motions is at least inconsistent. In any event, this Court finds that determination of the Expense Motions gives rise to "core" jurisdiction by virtue of its inherent authority to interpret and enforce its own orders and under 28 U.S.C. § 157(b)(2)(A) as directly and materially impacting administration of the Debtor's estate in various ways. However, if it is later determined that this Court has only "non-core" jurisdiction, this Opinion will constitute its proposed findings of fact and conclusions of law issued to the District Court pursuant to Fed. R. Bankr. P. 9033.

ii. Jurisdiction Relating to the Condemnation Action

As explained above, the Condemnation Action was removed to the District Court by the EPA pursuant to 28 U.S.C. § 1444. Without the involvement of the EPA, the Condemnation Action would, without a doubt, have proceeded in state court. There is no complete diversity of citizenship among the parties here such that the case could have proceeded in federal court on diversity grounds. *See* 13E Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 3605 (3d ed. April 2026) ("where more than one plaintiff sues more than one defendant and the jurisdiction rests on diversity of citizenship, each plaintiff must be capable of suing each defendant.") (quoting *Soderstrom v. Kungsholm Baking Co.*, 189 F.2d 1008, 1014 (7th Cir. 1951)). Thus, the District Court did not have jurisdiction based upon diversity which, as will be explained below, is of particular significance to the main issue presented to this Court in resolving the Expense Motions; i.e., whether § 20:3-26(b) of the New Jersey Eminent Domain

Act ("NJEDA"), which provides for reimbursement of fees and expenses to a condemnee post-abandonment, is substantive and applicable or procedural and pre-empted by Federal Rule of Civil Procedure 71.1.

B. Jurisdiction Analysis as Guided by *Erie*

i. Judge Krause's Opinion

Fortunately for this Court, a similar analysis has already been conducted in the Condemnation Action as to a different provision of the NJEDA. Third Circuit Judge Krause, sitting by designation, issued a Memorandum Opinion upon a Motion made by the Debtor to Compel Filing of a Declaration of Taking and Deposit of Just Compensation (the "Motion to Compel"), which was brought pursuant to § 20:3-25 of the NJEDA. Case No. 3:19-cv-12492 Dkt. No. 112. Under § 20:3-25, a condemnor must file a declaration of taking and deposit estimated compensation within six months of initiating the action, or risk mandatory abandonment of the proceedings. *See* N.J.S.A § 20:3-25.

As noted by Judge Krause, Federal Rule of Civil Procedure 71.1 makes clear that procedural matters in "eminent domain proceedings in federal court are exclusively governed by the Federal Rules of Civil Procedure, not by state procedural rules." Case No. 3:19-cv-12492 Dkt. No. 112 at 1 (citing *Tenn. Gas Pipeline Co. v. Permanent Easement for 7.053 Acres*, 931 F.3d 237, 249 (3d Cir. 2019)). Therefore, so long as § 20:3-25 was understood to govern *procedure*, it was displaced by Rule 71.1. The Debtor argued, however, that the New Jersey statute was substantive and thus was not displaced by Rule 71.1. *See* Case No. 3:19-cv-12492 Dkt. No. 112 at 2.

In determining that § 20:3-25 was in fact procedural, Judge Krause noted that the *Erie* doctrine, which is often called upon to settle conflicts between state and federal law, did not

apply because the District Court had independent *subject matter* jurisdiction under 28 U.S.C. § 1444. *Id*. at n.1. Nonetheless, because the November 2020 Order explicitly directed that New Jersey substantive law govern the Condemnation Action, Judge Krause was tasked with the determination of whether § 20:3-25 was indeed substantive. *Id*. at 1 (citing Case No. 3:19-cv-12492 Dkt. No. 39). Although not directly applicable, the Court was "guided by *Erie* and its progeny in analyzing the line between substance and procedure." *Id*. The same is true here; although not directly applicable, this Court will similarly be guided by *Erie* and its progeny in determining whether N.J.S.A. § 20:3-26(b) is substantive or procedural.

In analyzing the issue before her, Judge Krause explained that a procedural rule "typically 'governs only the manner and the means by which the litigants' rights are enforced,' while a substantive rule alters 'the rules of decision by which [the] court will adjudicate [Defendants'] rights." *Id*. at 2 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010) (quotation omitted) (plurality opinion)) (alterations in original). However, she noted that "'[t]he line between procedural and substantive law is hazy,'" and "[t]here may be rules that at first glance appear procedural but, on closer inspection, 'defin[e] the scope of substantive rights and remedies,' and thus are properly considered substantive." *Id*. (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 92 (1938); *Shady Grove*, 559 U.S. at 420).[8] The Court will undertake its analysis utilizing the principles that informed Judge Krause's decision.

ii. Whether Rule 71.1 "Covers" or Directly Collides with N.J.S.A. 20:3 § 3-26(b)

---

[8] For example, statutes of limitations, which may "function as procedural cut-offs, [] are in fact substantive because they are 'outcome-determinative.'" They also "may 'allow an action to proceed in federal court which would be time-barred in state court,' and could 'penalize the non-citizen defendant' for invoking federal jurisdiction." *Id*. (citing *Witherow v. Firestone Tire & Rubber Co.*, 530 F.2d 160, 166 (3d Cir. 1976)).

While the reasoning of Judge Krause's Memorandum Opinion certainly applies here, the Expense Motions invoke a substantively different section of the NJEDA. The relevant provision here is § 20:3-26(b), which provides that:

> if the condemnation action is abandoned by the condemnor, then the court *shall* award the owner of any right, or title to, or interest in such real property, such sum as will reimburse such owner for his reasonable costs, disbursements and expenses actually incurred, including reasonable attorney, appraisal, and engineering fees.

N.J.S.A. § 20:3-26(b) (emphasis added).

The Debtor and the Sass Creditors argue that they are entitled to reimbursement of their reasonable fees and expenses under § 20:3-26(b) because it is substantive and thus not displaced by Rule 71.1. Dkt. No. 230-2 at 13; Dkt. No. 246-1 at 13. The Agency and Redevelopers first argue that the substantive versus procedural distinction is irrelevant here because, under *Hanna v. Plumer*, 380 U.S. 460, 468 (1965), when the matter is "covered" by a Federal Rule of Civil Procedure the court must forego the *Erie* test and apply the Federal Rule without regard to whether it is substantive or procedural. Dkt. No. 241-1 at 22. Alternatively, the Agency and Redevelopers argue that even if Federal Rule 71.1 does not "cover" the right or entitlement to fees and expenses post-abandonment and does not directly conflict with § 20:3-26(b), that section is nevertheless procedural and therefore displaced by Rule 71.1. Dkt. No. 300 at 18.

This Court first finds that *Hanna* does not apply here because Rule 71.1 does not directly or indirectly "cover" or control the issue of a condemnee's entitlement to fees and expenses after a condemnor's abandonment. In determining whether a federal procedural rule "covers" an issue or results in a "direct collision" with state law under *Erie*, a court must ask, initially, "whether the scope of the Federal Rule in fact is sufficiently broad to control the issue before [it]." *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-50 (1980). Put differently, the court must

determine whether the Federal Rule of Civil Procedure controls or "covers" the issue, "thereby leaving no room for the operation of the state law, or whether the federal rule and the state law can "exist side by side," with "each controlling its own intended sphere of coverage without conflict." *Burlington Northern R. Co. v. Woods*, 480 U.S. 1, 5 (1987); *Walker*, 446 U.S. at 752.

This Court finds there to be no direct (or indirect) conflict or collision between Federal Rule of Civil Procedure 71.1 and N.J.S.A. § 20:3-26(b). Neither Rule 71.1 generally nor 71.1(k) specifically "covers" the effect of abandonment. In fact, both the Agency and Redeveloper acknowledge that Rule 71.1 is silent on the issue. *See* Dkt. No. 241-1 at 21; Dkt No. 301-1 at 8. The Agency and the Redeveloper argue, however, that under the principle of *expressio unius est exclusio alterius*[9], Rule 71.1(i)(1)(C)—which triggers an obligatory award of compensation to the condemnee for the title, lesser interest, or possession taken where a condemnation action has been dismissed by court order—excludes other kinds of compensation (such as attorneys' fees). Dkt. No. 300 at 15. This argument is unavailing.

Although the award of post-abandonment fees and expenses is not expressly "covered" by Rule 71.1, the lack of any reference to this substantive right should not be understood to signify what the Agency and Redeveloper suggest. Rule 71.1 does not "cover" the reimbursement of fees and expenses to a condemnee after abandonment because that substantive right is not governed by the Federal Rules of Civil Procedure and is beyond the scope of those procedural rules. As will be discussed in more detail below, it is a substantive right governed by statute. *See, e.g., Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013) ("Under the bedrock principle known as the 'American Rule' each litigant pays his own attorney's fees, win or lose,

[9] "*Expressio unius est exclusio alterius* is a Latin maxim which means 'to express one is to exclude the other,'" however, "it should be taken with a grain of salt—or even better, with a grain of common sense." *Abdullah v. American Airlines, Inc.*, 181 F.3d 363, 372 (3d Cir. 1999).

unless a *statute* or contract provides otherwise.") (internal quotation marks omitted) (emphasis added). In fact, as the Debtor points out, the United States Code contains a provision governing litigation expenses in federal condemnation proceedings that is nearly identical to N.J.S.A. § 20:3-26(b). Dkt. No. 230-2 at 13-14. Under 42 U.S.C. § 4654(a)(2), if a condemnation proceeding is instituted by a federal agency and later abandoned by the United States, the United States is required to reimburse the owner for their reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees. *See* 42 U.S.C. § 4654(a)(2). If Federal Rule of Civil Procedure 71.1 and 42 U.S.C. § 4654(a)(2) can "exist side by side" with "each covering its own intended sphere of coverage without conflict," there is simply no question that Federal Rule of Civil Procedure 71.1 and N.J.S.A. § 20:3-26(b) can do the same. *See Walker*, *supra*, at 752.

Additionally, Rule 71.1(i)(1)(C), which the Agency and Redeveloper rely upon for their *expressio unius* argument, addresses "compensation" for a taking, not attorneys' fees or other expenses to be awarded upon abandonment. Fed. R. Civ. P. 71.1(i)(1)(C). Just compensation for a taking and fee-shifting upon abandonment are substantively different concepts that give rise to substantially different rights. Thus, *expressio unius* does not apply. Further, to adopt the Agency and Redeveloper's *expressio unius* argument would be to suggest that the drafters of the Federal Rules of Civil Procedure intended to abrogate the substantive rights of property owners who, despite being involuntarily subjected to condemnation by a state agency, find themselves defending their rights in federal court. The Agency and Redeveloper's efforts to shoehorn a state substantive right into an implicit procedural conflict cannot succeed. Thus, this Court finds that Rule 71.1 does not "cover" the effect of abandonment, and *Hanna* is therefore inapplicable. The

Court must instead look to the classic distinctions between substance and procedure, using *Erie* as guidance, to determine whether to apply N.J.S.A § 20:3-26(b).

iii. Whether N.J.S.A. § 20:3-26(b) is Substantive or Procedural

Section 20:3-26(b) unambiguously confers upon a condemnee the right to be reimbursed (or the remedy of reimbursement) for the reasonable fees, costs, and expenses incurred during a condemnation action to which the condemnee was involuntary subjected, that was later abandoned by the condemnor. As the Supreme Court has explained, although a procedural rule may have "some practical effect on the parties' rights," it really "regulate[s] only the *process* for enforcing those rights," and does not "alter the rights themselves, the available remedies or the rules of decision by which the court adjudicated either." *Shady Grove*, 559 U.S. at 407-8 (emphasis added). This Court has already determined that Federal Rule of Civil Procedure 71.1 does not address the right to recovery of fees and expenses upon abandonment. If this Court were to hold that Rule 71.1 preempts N.J.S.A. § 20:3-26(b), it would materially alter—and indeed abrogate—the substantive right or remedy of reimbursement upon abandonment granted to New Jersey condemnees by statute. This result is unjust particularly where the parties consented to application of New Jersey substantive law and are in federal court based only upon the removal by the EPA. Although this matter does not present a typical diversity jurisdiction scenario, that distinction is one of form rather than substance in this circumstance. Thus, the principles governing the application of state substantive law in a diversity action apply with equal force here. On this point, the Supreme Court has explained that:

> in an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees *or giving a right thereto*, which reflects a substantial policy of the state, should be followed. Prior to the decision in *Erie*, this Court held that a state statute requiring an award of attorneys' fees should be applied in a

> case removed from the state courts to the federal courts: '(I)t is clear that it is the policy of the state to allow plaintiffs to recover an attorney's fee in certain cases, and it has made that policy effective by making the allowance of the fee mandatory on its courts in those cases. *It would be at least anomalous if this policy could be thwarted and the right so plainly given destroyed by removal of the cause to the federal courts*.' …[w]e see nothing after *Erie* requiring a departure from this result.

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975) (internal citations omitted) (emphasis added) (cleaned up). The same is true here, where the applicable statute *requires* the award of fees and expenses by using the world "shall." N.J.S.A. § 20:3-26(b) (if the action "is abandoned by the condemnor, then the court *shall* award [the impacted party] his reasonable costs, disbursements and expenses actually incurred, including reasonable attorney, appraisal, and engineering fees.") (emphasis added).

Similarly, the Third Circuit has expressly held that "[w]here there is a statutory provision shifting attorneys' fees and costs in a state statute creating the plaintiff's cause of action, a federal court exercising diversity or supplemental jurisdiction over that claim should, under *Erie*, … apply the state provision shifting fees and costs in the absence of a controlling federal statute, rule, or policy." *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1223 (3d Cir. 1995) (citing *Sec. Mut. Life Ins. Co. of N.Y. v. Contemporary Real Estate Assocs.*, 979 F.2d 329 (3d Cir. 1992); *McAdam v. Dean Witter Reynolds*, *Inc.*, 896 F.2d 750 (3d Cir. 1990)); *see also Mitzel v. Westinghouse Elec. Corp.*, 72 F.3d 414, 417 (3d Cir. 1995) ("Generally the right of a party or an attorney to recover attorney's fees from another party in a diversity action is a matter of substantive state law."). Denying Debtor the right to recover the reasonable fees and expenses incurred in the Condemnation Action would run afoul of this substantive policy of New Jersey law, as established by N.J.S.A. § 20:3-26(b). This result is not only "at least anomalous" but would

allow a party to use happenstance federal removal as a basis to evade a substantive state law obligation. *See Alyeska*, 421 U.S. at 259 n.31.

Indeed, the prevention of forum shopping is one of the twin aims of *Erie*,[10] along with avoidance of inequitable administration of the law. *See, e.g., Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith+Brown, P.C.*, 692 F.3d 283, 302 (3d Cir. 2012). The relevant determination, therefore, is "whether application of the [federal] rule would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court." *Id*. (citing *Hanna v. Plumer*, 380 U.S 460, 468 n.9 (1965)). In other words, the relevant determination is whether the result is outcome-determinative. This Court finds that the right to recover fees and expenses upon abandonment—after many years of hotly contested litigation—is outcome-determinative here.

This Court also finds that failure to enforce a § 20:3-26(b) would eviscerate a substantive state law right or remedy such that any plaintiff in the Agency and Redeveloper's shoes would be likely to choose federal court, as the Agency and Redeveloper are seeking to do here by the happenstance of removal by another party. To prevent this result, *Erie* ensures that the outcome of a particular matter does not depend entirely on which court is hearing it. *Id*. Accordingly, because the choice is outcome-determinative, enforcing Rule 71.1 to the exclusion of § 20:3-26(b) would disrupt the uniform administration of justice, and New Jersey's statutory fee-shifting remedy must apply.

iv. Whether There Are Any Countervailing Federal Interests

[10] Although the EPA—not the Agency or the Redeveloper—removed the case, letting the Agency and Redeveloper benefit from this removal still violates principles of *Erie*. Such an outcome would allow state actors to easily evade substantive state law and would encourage rather than prevent forum shopping.

Finally, *Erie* guides courts to "consider whether any countervailing federal interests prevent the state law from being applied in federal court." *Schmigel v. Uchal*, 800 F.3d 113, 119 (3d Cir. 2015) (internal citations omitted). There is no federal interest weighing against fee-shifting post-abandonment. To the contrary, as is discussed above, 42 U.S.C. § 4654(a)(2) provides for an almost identical remedy where the condemnation was instituted by a federal agency. *See* 42 U.S.C. § 4654(a)(2) (providing that if a condemnation proceeding instituted by a federal agency is abandoned by the United States, the United States shall reimburse the owner for their reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees). Thus, federal and state interests are entirely harmonious in compensating property owners who have been subject to the "awesome power" of condemnation when the condemnor unilaterally decides to abandon the condemnation. *Twp. of W. Orange v. 769 Assocs.* LLC, 198 N.J. 529, 537 (2009) (citing *Hous. Auth. of New Brunswick v. Suydam Investors,* LLC, 177 N.J. 2, 7 (2003)).

Importantly, the only reason § 4654 is inapplicable here is because the Condemnation Action, despite being tried in federal court, was not instituted by a federal agency. Yet, it is beyond dispute that where a federal agency institutes the condemnation, the action would generally proceed in federal court and where, as here, a state-level entity institutes the condemnation, the action would generally proceed in state court. Thus, generally speaking, 42 U.S.C § 4654 and N.J.S.A. § 20:3-26(b) would provide a nearly identical remedy to condemnees in both federal and state court. Therefore, not only is § 20:3-26(b) fully aligned with related federal interests, but it would also be untenable and inequitable to deny the Debtor reimbursement of its fees based on a federal removal loophole. This loophole would allow the Agency and the Redeveloper, who forced the Debtor to incur substantial fees through years of

costly litigation, to later abandon the Condemnation Action and leave the Debtor entirely responsible for those fees. That result is neither fair nor supported by any applicable law.

In sum, Federal Rule of Civil Procedure 71.1 provides that procedure in federal eminent domain proceedings is governed exclusively by the Federal Rules of Civil Procedure (not state procedural rules). Fed. R. Civ. P. 71.1(a). However, state substantive law governs matters that would alter the outcome of the action by changing the rights and remedies of the parties. In this case, based on this Court's holding that N.J.S.A. § 20:3-26(b) is a substantive provision that is not covered by, or much less in any direct collision with Federal Rule of Civil Procedure 71.1, and the parties agreement that New Jersey state substantive law as set forth in the NJEDA would apply in the Condemnation Action, this Court holds that N.J.S.A § 20:3-26(b) is applicable and controlling on the issue of the Debtor and the Sass Creditors' right to entitlement of fees and expenses upon abandonment. Accordingly, the Debtor and Sass Creditor's Expense Motions are hereby GRANTED.

C. *In Pari Delicto*

The Agency and Redeveloper argue that even if N.J.S.A. § 20:3-26(b) is substantive and the moving parties are thus entitled to reasonable fees and expenses, the Debtor's award should be reduced based on its bad faith. Dkt. No. 241-1 at 26. The Agency and the Redeveloper base this argument on the doctrine of *in pari delicto*. *Id*. at 28. *In pari delicto* is "the legal corollary of the equitable unclean hands doctrine," and "derives from the Latin maxim, *in pari delicto potior est conditio defendentis*, which means: in a case of equal or mutual fault the position of the party defending is the better one." *McAdam*, 896 F.2d at 756 (internal citations omitted) (cleaned up). Under this doctrine, a plaintiff's recovery may be barred if he or she is "an active, voluntary participant in the unlawful activity that is the *subject of the suit.*" *Id*. (citing *Pinter v. Dahl*, 486

U.S. 622, 635-36 (1976)) (emphasis in original). Further, "[u]nless the degrees of fault are essentially indistinguishable or the plaintiff's responsibility is clearly greater, the *in pari delicto* defense should not be allowed, and the plaintiff should be compensated." *Id*. at 757.

The Agency and Redeveloper argue that in its bankruptcy filings the Debtor willfully misrepresented the Property's environmental status or condition, specifically concerning a 2016 transformer spill incident and whether the Property's cleanup is subject to direct NJDEP oversight. Dkt. No. 241-1 at 26. As a result, the Agency and Redeveloper claim that they had "no notice" of NJDEP oversight involvement until "the eleventh hour of the Condemnation Action," that the Debtor's alleged misrepresentation left them with "no clarity on the issue of outstanding and potentially significant liabilities," and that they were therefore caused to abandon the Condemnation Action as a result. *Id*. at 28.

The Debtor asserts that the Agency and the Redeveloper did in fact have notice of the 2016 spill incident prior to filing the Condemnation Action in 2019. Dkt. No. 301-1 at 3. According to the Debtor, this notice is indisputable given that the State of New Jersey was named as a defendant in the Condemnation Action and the environmental lien on the Property arising from the 2016 incident was specifically referenced in the Condemnation Action Complaint. *Id*.; *see also* Case No. 3:19-cv-12492 Dkt. No. 1. The Debtor is correct. The Agency and the Redeveloper's arguments about lack of notice are plainly invalidated by the Condemnation Action Complaint itself. Naming the NJDEP as a defendant and specifically referencing the environmental lien in the Condemnation Action demonstrates that the Agency and the Redeveloper had long and ample notice of the 2016 spill and the NJDEP's involvement with the Property, whether by oversight or otherwise.

Additionally, to bar the Debtor's recovery under *in pari delicto,* the Debtor must be involved in unlawful activity that "is *the subject of the suit*." *McAdam*, 896 F.2d at 756 (emphasis in original). The Debtor's statements in its bankruptcy petition are not the subject of the Condemnation Action. The Agency's efforts to condemn the Property, and just compensation for the condemnation were the subject of that Action. Further, for the doctrine to apply, the Debtor's fault must be "essentially indistinguishable" from or "clearly greater" than that of the Agency and Redeveloper. The Agency and Redeveloper fall far short of the standard required to sustain an *in pari delicto* defense on the current record. Absent evidence of a duty to disclose or willful misrepresentation by the Debtor, there is no showing of mutual or greater fault—particularly given the Agency and Redeveloper's indisputable prior knowledge of the 2016 spill incident. Finally, the Debtor asserts it is the Agency and the Redeveloper that are acting in bad faith. Dkt. No. 301-1 at 17. The Court similarly has no basis on this record to determine that either party acted in bad faith, and any *in pari delicto* arguments are therefore rejected.

D. Reasonableness/Scope

The NJEDA provision at issue specifically limits any fee award to *reasonable* attorneys' fees and other expenses. *See* N.J.S.A. § 20:3-26(b). The Agency and the Redeveloper argue that the fees of the Debtor are not reasonable because, among other reasons, the fees sought to be reimbursed date back to at least 2001 and were incurred by the Debtor in connection with unrelated litigation the Debtor filed in New Jersey Superior Court and the Debtor's two bankruptcies. Dkt. No. 241-1 at 29-32.

As to these issues, both sides cite to *Twp. of W. Orange v. 769 Assocs., LLC*, 198 N.J. 529 (2009) for the proposition that a condemnee is entitled to reimbursement of "reasonable fees actually incurred as a *direct result* of the public entity's *formal action targeting* [the] property." Dkt. No. 230-2 at 13; Dkt. No. 241-1 at 30. The parties disagree as to when the Agency formally

targeted the Property, however. The Debtor argues that the Property formally became the target of condemnation on September 13, 2001. Dkt. No. 301-1 at 4. The Agency and Redeveloper argue that legislative history indicates an intention only to expand the category of awardable fees to include those reasonably incurred "in the mandatory negotiation period" leading up to the filing of a condemnation complaint, which was not until the Fall of 2019. Dkt. No. 241-1 at 30.

At the Hearing on July 29, 2026, both sides acknowledged that further factual development and legal analysis is needed to make a determination as to the reasonableness and scope issues. This Court agrees. Thus, this Opinion will not address the issues of reasonableness and scope at this time, except to state that analysis of the issue shall be guided by the *West Orange* case, particularly as to when the Property was "formally targeted" for redevelopment, what expenses were incurred as the direct result of that targeting, and the reasonableness of those expenses.

## IV. CONCLUSION

For the reasons set forth above, the Expense Motions are GRANTED as to the Debtor and Sass Creditors' entitlement to reimbursement for reasonable fees and expenses actually incurred as a direct result of the public entity's formal targeting of the Property. Because further factual development and legal analysis is required to determine the scope and reasonableness of any fees and expenses that may be awarded, those issues will be deferred at this time. The Court will address the nature of those further proceedings at the conference to be held on September 23, 2026 regarding the competing plans filed in this case.

September 16, 2026

Hon. Vincent F. Papalia, U.S.B.J.