| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
|---|---|
| *Caption in Compliance with D.N.J. LBR 9004-1(b)*<br><br>Stuart J. Glick, Esq.<br>**BRACEWELL LLP**<br>31 W. 52nd Street<br>Suite 1900<br>New York, NY 10019<br>Email: stuart.glick@bracewell.com<br><br>Attorneys for Cherry Tree Property, LLC, Sass Muni IV, LLC, Sass Muni V, LLC, and Sass Muni VI, LLC | |
| In Re:<br><br>S B BUILDING ASSOCIATES LIMITED PARTNERSHIP SUCCESSOR BY MERGER TO SB MILLTOWN INDUSTRIAL REALTY HOLDINGS, LLC, and ALSOL CORPORATION,<br><br>Debtors. | Case No.: 22-14231 (VFP)<br><br>Judge: Hon. Vincent F. Papalia<br><br>Chapter 11 |

**OBJECTION OF THE SASS CREDITORS TO THE ADEQUACY OF THE DISCLOSURE STATEMENT OF**
**S B BUILDING ASSOCIATES LIMITED PARTNERSHIP**

Cherry Tree Property, LLC, Sass Muni IV, LLC, Sass Muni V, LLC, and Sass Muni VI, LLC (collectively, the "Sass Creditors"), by and through their undersigned counsel, respectfully submit this objection (the "Objection") to the adequacy, under section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), of the disclosure statement filed by S B Building Associates Limited Partnership, successor by merger to SB Milltown Industrial Realty Holdings, LLC, and Alsol Corporation (the "Debtor") [Doc. 312] (the "Debtor's Disclosure Statement" and, the plan described therein [Doc. 311], the "Debtor's Plan"). In support of this Objection, the Sass Creditors respectfully state as follows.

## PRELIMINARY STATEMENT

The Debtor's Disclosure Statement does not contain "adequate information" within the meaning of section 1125(a)(1) of the Bankruptcy Code, and, independently, the Debtor's Plan it describes is patently unconfirmable, such that the Court should withhold approval of the Debtor's Disclosure Statement without first requiring the expense of creditor solicitation and a contested confirmation hearing. *See In re Am. Cap. Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012) ("It is now well accepted that a court may disapprove of a disclosure statement ... if the plan could not possibly be confirmed."); *In re Surma*, 504 B.R. 770, 776-77 (Bankr. D.N.J. 2014) (denying approval of a disclosure statement where the accompanying plan was "patently unconfirmable" as a matter of law).

The entirety of the Sass Creditors' recovery under the Debtor's Plan depends on contingencies that are either unfunded, unscheduled, or themselves dependent on a third party over whom the Debtor has no control. (Debtor's Disclosure Statement at 36.) The Sass Creditors are to be paid only $50,000.00 per month, with the balance of their Allowed Secured Claim deferred to a balloon payment triggered by the earlier of a sale of the Milltown Properties or a refinance or sale of the unrelated North Bergen Property. (Debtor's Disclosure Statement at 33.) Both triggering events remain unconsummated: the Debtor's proposed buyers for the Milltown Properties have allegedly been in discussions complicated and delayed by a dispute with Boraie over redevelopment rights, and the North Bergen Property is allegedly encumbered by a mortgage structured to reach a zero balance only in March 2030, with Lowe's option to renew not exercisable until March 2029. (Debtor's Disclosure Statement at 36, 39-41.) Conditioning the Sass Creditors' ultimate recovery on contingencies this uncertain, while offering no defined remedy if they do not materialize, renders the Debtor's Plan's funding structure speculative and the Debtor's Plan patently unconfirmable.

In addition to this material deficiency, the Debtor's Disclosure Statement suffers from numerous other deficiencies affecting the adequacy of disclosure, including the absence of the promised North Bergen commitment letter, an incomplete liquidation analysis, undisclosed terms of the Debtor's affiliate's obligation to fund Plan payments from the North Bergen Property, the absence of any defined remedy if a post-confirmation payment default occurs, and the omission of any comparison between the Sass Creditors' recovery under the Debtor's Plan and their recovery under the competing, cash-funded plan proposed by Boraie Development, LLC and Milltown Ford Avenue Redevelopers LLC. Each of these deficiencies independently supports denial of approval of the Debtor's Disclosure Statement, and several of them also render the Debtor's Plan patently unconfirmable as a matter of law, providing an independent basis for the relief requested herein.

## JURISDICTION AND VENUE

This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is section 1125 of the Bankruptcy Code.

## BACKGROUND

### A. The Sass Creditors' Interest

The Sass Creditors hold liens on the Debtor's real property located on Ford Avenue in the Borough of Milltown, Middlesex County, New Jersey. Under the Debtor's Plan, the Sass Creditors are classified across Classes 3 through 6, with only Class 3 (Sass Muni VI, LLC) receiving a direct monthly payment of $50,000.00; Classes 4 through 6 (Sass Muni IV, LLC, Sass Muni V, LLC, and Cherry Tree Property, LLC) receive only an unspecified, internally allocated portion of the payments made to Class 3. (Debtor's Disclosure Statement at 36-37.)

The balance of the Sass Creditors' claims is payable only as a balloon payment triggered by the earlier of the Debtor's receipt of sale proceeds from the Milltown Properties, or a refinance or sale of the North Bergen Property, an unrelated 12-acre property at 7801 Tonnelle Avenue, North Bergen, New Jersey, leased to Lowe's Home Centers, Inc. and titled in a non-debtor affiliate of the Debtor. (Debtor's Disclosure Statement at 33, 39.)

**B. The Proposed Milltown Properties Sale**

The Debtor's Disclosure Statement represents that the Debtor is negotiating sales contracts for the portions of the Property that were the subject of the Condemnation Action with two prospective buyers, Hallmark Homes Group and Pulte Homes, at a purchase price the Debtor estimates at approximately $40 million, potentially increased by a separate $6.5 million sale of open space to Middlesex County. (Debtor's Disclosure Statement at 37-39.) The Debtor's Disclosure Statement further represents that "[b]oth sales have been complicated and delayed because of Boraie's claim that as 'redeveloper' only Boraie has the right to redevelop the Property," that both prospective buyers are concerned Boraie will interfere with efforts to obtain municipal approvals, and that the Debtor intends to ask a court to enjoin Boraie's interference as part of any motion to approve a sale. (Debtor's Disclosure Statement at 39.) No purchase agreement, letter of intent, or term sheet with either prospective buyer is disclosed or attached.

**C. The Proposed North Bergen Refinance or Sale**

The Debtor's Disclosure Statement represents that the North Bergen Property is subject to a 30-year lease to Lowe's with a 10-year renewal option exercisable no later than March 2029, that the current $1.5 million annual rent is paid directly to the mortgage lender and is structured to amortize the approximately $6 million loan balance to zero only by March 2030, and that if Lowe's exercises its renewal option the property "would have a value of over $50 million." (Debtor's Disclosure Statement at 39-40.) The Debtor's Disclosure Statement further represents that the

Debtor's affiliate "has agreed to provide to the Debtor sufficient funds out of the sale or financing of the Lowe's property to enable [the] Debtor to pay all outstanding obligations ... remaining due under a confirmed Plan," an event the Debtor "estimates" will occur "by the end of 2030." (Debtor's Disclosure Statement at 41.) The Debtor's Disclosure Statement states that a commitment letter from the owner of the North Bergen Property is annexed as Exhibit B; the actual Exhibit B is marked "TO BE PROVIDED." (Debtor's Disclosure Statement at 37, 81.)

**D. The Liquidation Analysis and Post-Confirmation Management**

The Debtor's Disclosure Statement represents that a liquidation analysis supporting the best-interests test under section 1129(a)(7) of the Bankruptcy Code is annexed as Exhibit C. (Debtor's Disclosure Statement at 48.) The attached Exhibit C includes a chapter 7 and chapter 11 comparison in which numerous line items for disposition of property and associated recoveries are marked "To Be Provided." (Debtor's Disclosure Statement at 83.) The Debtor's Disclosure Statement further represents that Realty Management Associates, an entity affiliated with the Debtor's principal, Lawrence S. Berger, will continue to manage the Properties after confirmation for a fee of 4% of gross collected rents, and that Mr. Berger will remain in control of the Debtor's day-to-day operations. (Debtor's Disclosure Statement at 41.)

**E. The Sass Creditors' Pending Motion for Expenses**

Following the Milltown-Ford Avenue Redevelopment Agency's abandonment of its condemnation action, the Sass Creditors filed a motion for an order awarding expenses incurred in connection with the condemnation action and this bankruptcy case [Doc. 246], seeking not less than $474,746.23 in attorneys' fees and expenses. By Opinion entered September 16, 2026 [Doc. 318], the Court granted the Sass Creditors' and the Debtor's entitlement, in principle, to reimbursement of reasonable fees and expenses actually incurred as a direct result of the public entity's formal targeting of the Property, but expressly deferred determination of the scope and

reasonableness of any amount to be awarded pending further factual development, to be addressed at a conference scheduled for September 23, 2026. The Debtor's Disclosure Statement does not disclose the Court's September 16, 2026 Opinion, the fact that the Sass Creditors' entitlement to fees and expenses has now been established (subject to final quantification), or how and when the resulting Allowed Claim, once quantified, will be paid under the Debtor's Plan.

**F. The Sass Consent Order and Its Incorporation Requirement**

The Sass Creditors' secured claims against the Debtor arise from a settlement reached in the Debtor's prior (2013) bankruptcy case, memorialized in a Consent Order entered in September 2017 (the "Sass Consent Order") [Case No. 13-12682-VFP, Doc. 483-1]. Paragraph 18 of the Sass Consent Order expressly provides that "[t]he terms of this Consent Order shall be incorporated in any and all plans of reorganization or liquidation proposed and confirmed by any of the Milltown Debtors, with all payments thereunder to continue under such plans." Paragraph 14 provides that "[t]he Sass Parties shall retain all of their liens on all of the Milltown Debtors' real properties until the Amended Claims are timely paid in full." Paragraph 12 provides that the Amended Claims "shall be paid the earlier of (i) receipt of sale or condemnation proceeds in an amount sufficient to pay off the Amended Claims, with any and all accrued interest, in full . . . or (ii) six years from the Milltown Original Execution Date" of August 25, 2016 — i.e., no later than August 25, 2022. The Debtor's Disclosure Statement does not disclose whether, or how, the Debtor's Plan's proposed treatment of the Sass Creditors across Classes 3 through 6, including the $50,000.00 monthly payment and balloon-payment structure described above, is consistent with, modifies, or supersedes these original terms, nor does it address Paragraph 18's provision that it was "an incurable and immediate Event of Default if the Milltown Debtors fail[ed] to confirm plans of reorganization by October 1, 2019."

## ARGUMENT

### I. The Bankruptcy Court Should Deny Approval of the Debtor's Disclosure Statement Because the Underlying Plan Is Patently Unconfirmable

It is well-settled that "if it appears there is a defect that makes a plan inherently or patently unconfirmable, the Court may consider and resolve that issue at the disclosure stage before requiring the parties to proceed with solicitation of acceptances and rejections and a contested confirmation hearing." *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012) (quoting *In re Larsen,* No. 09-02630, 2011 WL 1671538, at *2 n.7 (Bankr. D. Idaho May 3, 2011)). A bankruptcy court therefore "may address the issue of plan confirmation where it is obvious at the disclosure statement stage that a later confirmation hearing would be futile because the plan described by the disclosure statement is patently unconfirmable." *Id.* A plan is patently unconfirmable where "(1) confirmation defects cannot be overcome by creditor voting results and (2) those defects concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing." *Id.* (quoting *In re Monroe Well Serv., Inc.*, 80 B.R. 324, 333 (Bankr. E.D. Pa. 1987)) (internal quotations omitted). As the Third Circuit explained, "[o]nly where the disclosure statement on its face relates to a plan that cannot be confirmed does the court have an obligation not to subject the estate to the expense of soliciting votes and seeking confirmation of the plan." *Id.* (quoting *In re Dakota Rail, Inc.,* 104 B.R. 138, 143 (Bankr. D. Minn. 1989)) (emphasis omitted); *see also In re Surma*, 504 B.R. 770, 773, 776-77 (Bankr. D.N.J. 2014) (the Court denied approval of a Chapter 11 disclosure statement because the accompanying plan was "patently unconfirmable" as a matter of law, explaining that "this Court is charged with the responsibility to evaluate whether the Debtor's plan is patently unconfirmable as a matter of law," and that "[i]t is within the Court's discretion to deny approval of a disclosure statement if the accompanying plan is unconfirmable on its face").

### A. The Debtor's Plan Is Not Feasible Under Section 1129(a)(11), and That Defect Cannot Be Cured by Creditor Voting

Confirmation requires a showing that confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization" of the debtor. 11 U.S.C. § 1129(a)(11). "A plan will not be feasible if its success hinges on future litigation that is uncertain and speculative," and a plan whose funding source is "speculative at best and visionary at worst" is not feasible. *In re Am. Cap. Equip., LLC*, 688 F.3d at 155-56. Here, the entirety of the Sass Creditors' ultimate recovery beyond $50,000.00 per month is conditioned on the earlier of two unconsummated transactions. (Debtor's Disclosure Statement at 33, 36.) As to the Milltown Properties, the Debtor's own Disclosure Statement discloses that both prospective buyers' negotiations "have been complicated and delayed" by a dispute with Boraie over redevelopment rights, and that the Debtor intends to seek injunctive relief against Boraie merely to clear the way for a sale to proceed—relief that is neither pending nor assured. (Debtor's Disclosure Statement at 39.) As to the North Bergen Property, the Debtor's own timeline shows that refinancing is not expected to generate funds until Lowe's exercises, or declines to exercise, its renewal option no earlier than March 2029, and that the existing mortgage is not expected to reach a zero balance until March 2030—and the Debtor's Disclosure Statement itself "estimates" that the Debtor's affiliate will be in a position to fund the Plan's obligations only "by the end of 2030," more than four years from now. (Debtor's Disclosure Statement at 39-41.) A plan that defers the overwhelming majority of a secured creditor's recovery for years, to transactions neither under contract nor within the Debtor's control to complete, rests on funding that is speculative within the meaning of *American Capital Equipment*. This concern is not merely theoretical: the United States, in its own October 19, 2026 consolidated response and objection to both disclosure statements, has observed that the Debtor proposed a similar rents, sale, and refinance funding structure in the plan

of reorganization confirmed in the Debtor's preceding bankruptcy, and that the United States has not received any payments under that structure. [Doc. 332 at 4-5.] This documented history of non-performance under a materially similar funding mechanism in this Debtor's own prior case further confirms that the Debtor's Plan rests on speculative, rather than reasonably assured, funding. This feasibility defect does not depend on creditor votes and cannot be cured by them; it rests on the Debtor's own disclosed timeline and undisputed status of the Milltown and North Bergen transactions.

**B. The Debtor's Plan Does Not Satisfy the Best Interests of Creditors Test Under Section 1129(a)(7), and That Defect Cannot Be Cured by Creditor Voting**

Section 1129(a)(7) requires that each holder of an impaired claim receive property of a value, as of the effective date, not less than the amount such holder would receive in a hypothetical chapter 7 liquidation. Although the Debtor's Disclosure Statement represents that a liquidation analysis is annexed as Exhibit C (Debtor's Disclosure Statement at 48), the attached analysis leaves numerous line items for disposition of property and recoveries marked “To Be Provided,” (Debtor's Disclosure Statement at 83), rendering it incomplete on its face and insufficient to permit a meaningful comparison of recoveries. Nor does the Debtor's Disclosure Statement compare the Sass Creditors' recovery under the Debtor's Plan to their recovery under the competing, cash-funded plan proposed by Boraie Development, LLC and Milltown Ford Avenue Redevelopers LLC. Absent a completed liquidation analysis, the Debtor's Plan cannot be confirmed over a dissenting class's objection, and this deficiency is not one that creditor voting can supply.

**II. The Debtor’s Disclosure Statement Fails to Provide the Adequate Information Required Under Section 1125**

Separate and apart from the patent unconfirmability of the Debtor's Plan, section 1125(a)(1) of the Bankruptcy Code requires that a disclosure statement contain "adequate

information," defined as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor . . . and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1); *see also In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (D.N.J. 2005) ("[W]e cannot overemphasize the . . . obligation to provide sufficient data to satisfy the Code standard of adequate information.") (quoting *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 322 (3d Cir. 2003)). A disclosure statement must be evaluated under the totality of the circumstances, with courts taking "a practical approach as to what is necessary under the circumstances of each case," and must disclose all facts material to creditors' decision whether to accept or reject the proposed plan. *In re Lisanti Foods, Inc.*, 329 B.R. at 507-08. The Debtor's Disclosure Statement falls short of this standard in at least eight material respects.

First, the Debtor's Disclosure Statement does not disclose the status of any purchase agreement, letter of intent, or term sheet with either Hallmark Homes Group or Pulte Homes for the Milltown Properties, the expected timeline for resolving the dispute with Boraie that the Debtor's own Disclosure Statement says has "complicated and delayed" both negotiations, or the status of the injunctive relief the Debtor states it intends to seek against Boraie. (Debtor's Disclosure Statement at 39.) Creditors cannot evaluate the realism of a $40 million sale on which their recovery depends without this information.

Second, the Debtor's Disclosure Statement states that a commitment letter from the owner of the North Bergen Property is annexed as Exhibit B, but the actual Exhibit B filed with the

Debtor's Disclosure Statement is marked "TO BE PROVIDED." (Debtor's Disclosure Statement at 37, 81.) Creditors cannot evaluate the single funding source on which the Debtor's own Disclosure Statement says the ultimate satisfaction of all outstanding Plan obligations depends without the commitment letter the Debtor's Disclosure Statement itself represents exists.

Third, the Debtor's Disclosure Statement does not disclose the ownership and control relationship between the Debtor and the non-debtor affiliate that holds title to the North Bergen Property, the specific terms of that affiliate's agreement "to provide to the Debtor sufficient funds out of the sale or financing of the Lowe's property," or whether that agreement is binding and enforceable by the Debtor's creditors. (Debtor's Disclosure Statement at 41.) Because the Sass Creditors have no direct lien on the North Bergen Property, they are entitled to understand the legal mechanism, if any, by which that affiliate's informal undertaking will actually result in funds reaching the Debtor's estate. The United States, in its own October 19, 2026 consolidated response and objection to both disclosure statements, has independently identified this same deficiency, noting that the Debtor's Disclosure Statement provides no address or other financial information for the affiliate, identified only as "North Bergen Plaza, L.P.," and does not identify the Debtor's other, unnamed real estate holdings referenced as an alternative funding source. [Doc. 332 at 4-5.]

Fourth, the liquidation analysis annexed as Exhibit C leaves numerous line items for disposition of property and recoveries marked "To Be Provided." (Debtor's Disclosure Statement at 83.) An incomplete liquidation analysis does not permit creditors to evaluate whether the Debtor's Plan satisfies the best-interests test under section 1129(a)(7), nor does it permit a comparison to the recovery available under the competing Boraie plan. The United States, in its own October 19, 2026 consolidated response and objection to both disclosure statements, has independently identified this same deficiency, counting ten Chapter 7 column line items marked

"To Be Provided" in the Debtor's Liquidation Analysis, and has further objected that the Debtor's Cash Flow Projections in Exhibit D hold income and expenses constant for three years with no adjustment for annual rent increases or inflation, which the United States describes as unrealistic and a further failure to disclose proper estimates. [Doc. 332 at 5.] The Sass Creditors join in and adopt this additional, independently identified deficiency regarding the Debtor's Cash Flow Projections.

Fifth, the Debtor's Plan does not provide for a stated cure period, default interest rate, or automatic acceleration of the balloon payment in the event the Debtor fails to make a required post-confirmation payment to the Sass Creditors, leaving a motion to convert or dismiss the case under section 1112(b) of the Bankruptcy Code as the only apparent remedy. (Debtor's Disclosure Statement at 50.) The Debtor's Disclosure Statement does not disclose or explain this limitation, and creditors are entitled to understand, before voting, what recourse they would have if the Debtor's projected payments do not materialize.

Sixth, the Debtor's Disclosure Statement does not incorporate the Court's September 16, 2026 Opinion [Doc. 318], which granted the Sass Creditors' entitlement, in principle, to reimbursement of fees and expenses while deferring quantification of the amount to further proceedings, the class in which the resulting Allowed Claim will be classified once quantified, or how and when it will be paid under the Debtor's Plan.

Seventh, the Debtor's Disclosure Statement does not compare the Sass Creditors' recovery, or any other creditor's recovery, under the Debtor's Plan to the recovery available to the same creditors under the competing, cash-funded plan proposed by Boraie Development, LLC and Milltown Ford Avenue Redevelopers LLC, which proposes a specific, cash-funded recovery at a

defined Effective Date. Creditors cannot meaningfully choose between the two competing plans without this comparative information.

Eighth, the Debtor's Disclosure Statement does not disclose whether, or how, the Debtor's Plan's proposed treatment of the Sass Creditors is consistent with the Sass Consent Order [Case No. 13-12682-VFP, Doc. 483-1], a settlement approved by this Court in the Debtor's prior bankruptcy case whose terms were required, under Paragraph 18, to "be incorporated in any and all plans of reorganization or liquidation, with all payments thereunder to continue under such plans." The Debtor's Plan proposes a $50,000.00 monthly payment and balloon-payment structure materially different from the Sass Consent Order's lien-retention-until-paid-in-full requirement under Paragraph 14 and the payment triggers under Paragraph 12, without any disclosure of the basis on which the Debtor believes it may depart from the incorporation requirement to which it previously agreed, or any discussion of Paragraph 18's provision that the Milltown Debtors' failure to confirm a plan of reorganization by October 1, 2019 was "an incurable and immediate Event of Default."

For the foregoing reasons, the Sass Creditors respectfully submit that the Debtor's Disclosure Statement cannot be approved as containing adequate information, and that the Court should withhold approval given the patent unconfirmability of the underlying Debtor's Plan.

## RELIEF REQUESTED

WHEREFORE, the Sass Creditors respectfully request that the Court (a) sustain this Objection, (b) deny approval of the Debtor's Disclosure Statement on the ground that the Debtor's Plan is patently unconfirmable and/or that the Debtor's Disclosure Statement fails to provide adequate information, in either case unless and until the deficiencies identified herein are cured,

and (c) grant such other and further relief as the Court deems just and proper.

Dated: October 20, 2026

Respectfully submitted,

**BRACEWELL LLP**

*Attorneys for the Sass Creditors*

By: */s/ Stuart J. Glick*
Stuart J. Glick, Esq.